IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ALVIN C. HARRIS, | ) |
| Petitioner, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:13-CV-90 (MTT) |
| DARRELL HART, *Warden, Wilcox State Prison*, | ) ) ) ) |
| Respondent. | ) ) |

### ORDER

Petitioner Alvin C. Harris seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The one year statute of limitation for seeking this relief began to run on August 8, 2005 when his state conviction became final. Although he claims, understandably, that his appeal counsel abandoned him, he nevertheless learned that his direct appeal had been denied and he filed, pro se, a state habeas action on March 29, 2006 which tolled the running of the statute of limitations. The statute began to run again on May 1, 2006 when the superior court, at the Petitioner's request, dismissed his petition without prejudice. By the time he refiled his state petition on June 30, 2008, the statute of limitations had long since run. The Petitioner now contends he is entitled to equitable tolling because of attorney abandonment. The Court disagrees and therefore **GRANTS** the Respondents' motion to dismiss. (Doc. 6).

### I.   BACKGROUND

On October 3, 1998, the Petitioner was indicted in the Superior Court of Bibb County for felony murder, aggravated assault, two counts of possession of a firearm

during the commission of a felony, and possession of a firearm by a convicted felon. (Doc. 1 at ¶¶ 5, 6). The court appointed Joseph Mitchell Williams ("trial counsel") to represent the Petitioner. (Doc. 1 at ¶ 7). On June 23, 1999, a jury found the Petitioner guilty of felony murder, aggravated assault, and two counts of possession of a firearm during the commission of a felony. (Doc. 1 at ¶ 10). The Petitioner pled guilty to possession of a firearm by a convicted felon. (Doc. 1 at ¶ 10). On July 26, 1999, the Petitioner received a mandatory life sentence for felony murder, ten years consecutive for aggravated assault, and five years for each count of possession of a firearm during the commission of a felony to run concurrently with each other but consecutive to the life sentence. (Doc. 1 at ¶ 13).

Williams filed a motion for new trial on August 6, 1999. (Doc. 1 at ¶ 14). The trial court appointed new counsel, Renate Downs Riley (formerly Renate Downs Moody) ("appellate counsel"), who twice amended the motion for new trial. (Docs. 1 at ¶¶ 15, 16; 1-5; 1-6). The trial court denied the motion on June 4, 2004, and the Georgia Supreme Court affirmed the Petitioner's conviction on May 9, 2005. (Doc. 1 at ¶¶ 16-17); *Harris v. State*, 279 Ga. 304, 612 S.E.2d 789 (2005). The Petitioner did not seek a writ of certiorari from the Supreme Court of the United States.

On March 29, 2006, the Petitioner filed a pro se application for a writ of habeas corpus in the Superior Court of Macon County. (Doc. 20-1). The petition claimed appellate counsel was ineffective in raising issues in his motion for new trial and on appeal, in failing to properly litigate issues in his motion for new trial and on appeal, and in failing to adequately investigate and prepare issues in support of his motion for new trial and appeal. (Doc. 20-1 at 4). The Petitioner subsequently moved to dismiss the

state petition, and the superior court dismissed his petition on May 1, 2006. (Doc. 20-2). After securing current counsel, the Petitioner filed another state habeas corpus petition on June 30, 2008, alleging 40 grounds for relief.[1] (Docs. 1 at ¶ 18; 7-2). After an evidentiary hearing, the trial court denied relief in an order entered January 11, 2012. (Docs. 1 at ¶¶ 19-24; 1-3).

On May 9, 2012, the Georgia Supreme Court granted a certificate of probable cause on the issue of whether the Petitioner's appellate counsel was ineffective in failing to investigate and present evidence of the Petitioner's claims of ineffective assistance of trial counsel. (Docs. 1 at ¶ 31; 7-7). After briefing and oral argument, the Georgia Supreme Court affirmed the state habeas court's decision on March 4, 2013. (Doc. 1 at ¶¶ 32-34); *Harris v. Upton*, 292 Ga. 491, 739 S.E.2d 300 (2013).

The Petitioner filed the present petition pursuant to 28 U.S.C. § 2254 on March 14, 2013. (Doc. 1). There are eight grounds for relief claimed. The first three claims allege ineffective assistance of trial counsel in: (1) failing to communicate the existence of the State's plea offer to the Petitioner; (2) failing to communicate the substance of the State's plea offer to the Petitioner; and (3) failing to understand or grossly underestimating the Petitioner's "maximum sentencing exposure under the counts in the indictment, including failing to understand that felony murder carried a mandatory life sentence." Claims four through seven allege ineffective assistance of appellate counsel in: (4) failing to timely communicate with the Petitioner; (5) failing to properly investigate claims or defenses that the Petitioner could have asserted; (6) "operating under the mistaken assumption that the law required Trial Counsel to be under the influence of

---

[1] Because it is not pertinent to the pending motion to dismiss, the Court refrains from listing all 40 grounds in the second state habeas corpus petition. Most of the grounds are premised on ineffective assistance of either trial counsel or appellate counsel.

drugs at the time of *trial*, rather than during the time of his *representation*, to establish ineffective assistance of Trial Counsel;" and (7) failing to preserve the Petitioner's positions for appeal and post-conviction relief.  Claim eight alleges that the state habeas court violated the Petitioner's due process rights under the Fifth and Fourteenth Amendments when it adopted verbatim the State's proposed order dismissing the Petitioner's state habeas corpus petition.

The Respondent has moved to dismiss claims one through seven as untimely and claim eight for failure to state a claim for federal habeas corpus relief.  (Doc. 6).

## II.    DISCUSSION

### A.    AEDPA Statute of Limitations and Tolling

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner seeking a writ of habeas corpus based on a state court judgment must file his federal petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[2]  For petitioners who do not pursue direct review to the United States Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."  *Gonzales v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012).  The statute also provides a basis for tolling.  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" does not count toward the one year for filing a § 2254 petition.  28 U.S.C. § 2244(d)(2).

---

[2] The Petitioner does not contend any of the other possible triggering events for the one year statute of limitations are applicable.  *See* 28 U.S.C. § 2244(d)(1)(A)-(D).

In addition to statutory tolling, the Supreme Court has held AEDPA's one-year limitation may be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631 (2010). For equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks and citation omitted). A petitioner must also show a "causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (citing *Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* (quoting *Holland*, 560 U.S. at 653) (internal quotation marks omitted).

In *Cadet v. Florida Department of Corrections*, 742 F.3d 473 (11th Cir. 2014), the Eleventh Circuit clarified when attorney misconduct constitutes an "extraordinary circumstance" for AEDPA equitable tolling in light of the Supreme Court's decisions in *Holland* and *Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912 (2012). The court held "attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship … is required." *Cadet*, 742 F.3d at 481. Discussing *Holland*, the court noted that, while the majority opinion seemed to suggest gross negligence might warrant equitable tolling, the Supreme Court never actually determined whether Holland was entitled to equitable tolling. *Id.* at 480 (citing *Holland*, 560 U.S. at 653-54). Further, in *Maples*, the Supreme Court adopted the distinction in Justice Alito's *Holland* concurrence between "attorney negligence, however styled and however egregious, on

the one hand, and attorney abandonment on the other." *Id.* at 481 (citing *Maples*, 132 S. Ct. at 923 & n.7). Though *Maples* concerned a petitioner's procedural default of his habeas claims in state court, the Supreme Court explained it saw "'no reason … why *the distinction between attorney negligence and attorney abandonment* should not hold in both' the equitable tolling and procedural default contexts." *Id.* at 480 (citing *Maples*, 132 S. Ct. at 923 & n.7) (emphasis by Eleventh Circuit).

### B.  Equitable Tolling of Petitioner's Claims[3]

The Petitioner's conviction became final on August 8, 2005,[4] which is when the time for him to seek a writ of certiorari in the Supreme Court expired. Therefore, the time to file a federal habeas petition expired August 8, 2006. AEDPA's one year statute of limitations was tolled on March 29, 2006 when the Petitioner filed his state habeas petition. But that statutory tolling ended on May 1, 2006 when the state habeas court dismissed his petition. By the time he refiled his state habeas petition on June 30, 2008, the one year statute of limitations had run. Thus, the Petitioner's claims are time-barred unless, as the Petitioner contends, equitable tolling applies.

As his "extraordinary circumstance warranting equitable tolling," the Petitioner claims attorney abandonment. Taking the Petitioner's allegations as true, he was arguably abandoned by his appellate counsel after his direct appeal concluded. She apparently had no further contact with him after filing a brief in support of his direct

---

[3] The Petitioner has requested an evidentiary hearing for determining facts relevant to whether equitable tolling is warranted. However, the Court finds an evidentiary hearing is not necessary because the Petitioner has not alleged facts that, if true, warrant equitable tolling. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011).

[4] The Georgia Supreme Court affirmed his conviction on direct appeal on May 9, 2005. Therefore, his conviction became final 90 days later when the time for him to seek a writ of certiorari from the U.S. Supreme Court expired. Sup. Ct. R. 13. Because August 7, 2005 falls on a Sunday, the Petitioner would have had until August 8, 2005 to file a petition for certiorari. Sup. Ct. R. 30.

appeal. In fact, she apparently did not respond to the Petitioner's letter requesting a copy of the Georgia Supreme Court's decision. (Docs. 10-5; 10-6). It appears she also had minimal contact with him while she was working on his motion for new trial and his direct appeal. (Docs. 1 at ¶¶ 71-75, 79, 80; 10-1 to 10-4).

Despite the arguable abandonment by his attorney, the Petitioner has failed to show the requisite causal connection between this extraordinary circumstance and the late filing of his federal petition. The Petitioner learned his conviction had been affirmed on appeal in September 2005 when the Georgia Supreme Court responded to his inquiry about the status of his appeal. (Doc. 10-3 at 4-5). The Petitioner had more than enough time to pursue a timely state habeas petition to toll the AEDPA statute of limitations, which is just what he did on March 29, 2006.[5] However, the Petitioner voluntarily dismissed this first petition, allegedly after being told he would be placed in solitary confinement for an indeterminate amount of time after being attacked by a fellow inmate.[6] This voluntary dismissal started the AEDPA clock running again. The Petitioner is not claiming that his attorney's abandonment caused him to voluntarily dismiss his pro se petition. It is hard to imagine how he could. He also does not allege appellate counsel misinformed him about the relevant statute of limitations. In short, there is no basis for the Court to conclude that his later dismissal and subsequent late filing resulted from his attorney's abandonment. *See Reynolds v. McLaughlin*, 2013 WL 3756473, at *2 (M.D. Ga.) (finding the petitioner did not show causal connection between his attorney's misconduct in not informing him his appeal was denied and late

---

[5] Though the Petitioner learned his conviction had been affirmed after it was final within the meaning of AEDPA, he still had nearly eleven months of the one-year limitations period left.

[6] The Petitioner has not proffered any evidence of this; it is only mentioned in counsel's briefing.

filing of petition where petitioner learned of appellate ruling with enough time to pursue habeas relief).

The Petitioner has cited two cases from outside this circuit, *Ross v. Varano*, 712 F.3d 784 (3d Cir. 2013) and *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000), to explain why his filing a timely state habeas petition and later dismissing it does not undermine his equitable tolling argument. Neither compels a different result. In *Ross*, the petitioner filed motions for collateral relief after years of trying unsuccessfully to get his attorney to appeal his conviction and being misinformed by his attorney that an appeal was ongoing. 712 F.3d at 791-94. These facts are not remotely similar to the facts here.

The Petitioner's reliance on *Valverde* is difficult to understand. In *Valverde*, the petitioner's legal papers were confiscated by a prison official shortly before the filing deadline. 224 F.3d at 135. The Petitioner cites the court's observation that:

> A petitioner's own behavior (in addition to his failure to exercise reasonable diligence which is discussed in some detail below) may of course fatally undermine his claim that "rare and extraordinary" or "exceptional" circumstances warrant equitable tolling. A petitioner's deliberate destruction of his own petition on the eve of the filing deadline, for example, "extraordinary" though it might be, would be unlikely to provide a basis for the petitioner successfully to argue that he or she was entitled to file sometime after the deadline had passed. Indeed, such behavior can be viewed as tantamount to the petitioner's failure to exercise reasonable diligence.

*Id.* at 133 n.3. From this, the Petitioner argues his extraordinary diligence in filing on his own a state petition does not eliminate the prejudice he suffered when his lawyer abandoned him. But it does, at least with regard to the statute of limitations. The fact that he filed a timely state habeas petition after learning his direct appeal concluded and then voluntarily dismissed it means any misconduct on the part of his attorney was not

an extraordinary circumstance that "stood in his way and *prevented timely filing*." *Holland*, 560 U.S. 631, 130 S. Ct. at 2562 (emphasis added) (internal quotations marks and citation omitted). The Petitioner's own behavior in voluntarily dismissing his pro se petition has "fatally undermined" his claim. Unlike the petitioner in *Valverde*, the Petitioner cannot show his asserted extraordinary circumstance stood in the way to prevent his timely filing.

The Petitioner urges the Court to consider as a whole the "chain of events" of his attorney's abandonment, his pro se state habeas petition, his dismissal due to being placed in solitary confinement, and his efforts to seek post-conviction counsel after being released from solitary confinement. While a number of external factors can amount to "extraordinary circumstances" warranting equitable tolling, this is not such a case. The Petitioner cannot tack on his attorney's abandonment to his solitary confinement that happened *after* he found out his conviction had been affirmed and *after* he first timely filed a state habeas petition in order to explain his voluntary dismissal and subsequent late filing. Further, the Court doubts the Petitioner's placement in solitary confinement for a few months is itself an "extraordinary circumstance" sufficient to warrant equitable tolling.[7] *See Miller v. Florida*, 307 F. App'x 366, 368 (11th Cir. 2009) ("[E]ven restricted access to law library, lock-downs, and solitary confinement do not qualify as [extra]ordinary circumstances warranting equitable tolling."); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (transfer to county jail and denial of access to law library and legal papers did not

---

[7] At any rate, the Petitioner has not alleged facts showing his solitary confinement was somehow wrongful or contrary to routine prison administration (he merely alleges he was attacked by another inmate without providing further details). Nor has he made specific allegations or a proffer of evidence showing an evidentiary hearing would be warranted on this issue.

constitute extraordinary circumstances); *Dodd v. United States*, 365 F.3d 1273, 1282-83 (11th Cir. 2004) (finding ten-month transfer of inmate to another facility without his legal papers likely not an extraordinary circumstance); *Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000) (finding prison lockdown was not an extraordinary circumstance).

For similar reasons, the Petitioner has failed to show reasonable diligence. While the Petitioner has proffered a number of documents to show he was reasonably diligent in pursuing his rights, none of them sufficiently explain his voluntary dismissal of his initial state habeas petition or failure to refile until over two years had elapsed.[8] Most of the correspondence presented concerns the Petitioner's direct appeal and occurred prior to his learning his conviction was affirmed. As far as the Court can tell, the only actions the Petitioner took after he was released from solitary confinement were to write three letters to legal services organizations in an attempt to secure counsel. There are two on record, and current counsel represents they were secured by a letter sent to Mercer University Law School.

---

[8] The Petitioner has presented: a letter dated November 10, 2004 to the Georgia Supreme Court asking about his direct appeal and a response (Doc. 10-1); a letter dated November 29, 2004 to the Superior Court of Bibb County asking about his direct appeal and a response (Doc. 10-2); a letter dated August 30, 2005 to the Georgia Supreme Court asking about his direct appeal and a response (Doc. 10-3); a letter dated August 30, 2005 to the Superior Court of Bibb County asking if his appellate counsel was still representing him and a response (Doc. 10-4); a letter dated September 16, 2005 to his appellate counsel expressing his displeasure at her lack of communication and that she had cost him the opportunity to file a motion for reconsideration (Doc. 10-5); a letter dated September 22, 2005 to the Georgia Supreme Court requesting a copy of the decision on his appeal and a response (Doc. 10-6); a letter dated January 30, 2006 to the State Bar of Georgia asking about his trial counsel and a response (Doc. 10-7); the Petitioner's motion to voluntarily dismiss his pro se state habeas petition and the order from the Superior Court of Macon County filed May 1, 2006 granting the Petitioner's motion (Doc. 10-8); a letter, apparently sent in late September 2006, to Georgia Legal Services requesting representation and a response (Doc. 10-9); and a response from the Bluhm Legal Clinic to a letter, apparently dated November 19, 2007, seeking representation (Doc. 10-10). He received correspondence back from the Georgia Supreme Court informing him his direct appeal was concluded in September 2005. (Doc. 10-3 at 4-5).

At most, the Petitioner would be entitled to equitable tolling from the time his conviction became final until he filed his first state habeas petition, and that would only amount to tolling of 233 days plus the 33 days of statutory tolling while his first petition was pending.  Giving the Petitioner the benefit of 266 days of tolling, AEDPA's statute of limitations ended on May 1, 2007.  Consequently, the Petitioner's second state habeas petition was filed well outside the limitations period.

### C.     Claim 8

The Court further finds the Petitioner's eighth claim—alleging the Petitioner was denied due process of law in the state habeas court proceeding—does not state a claim for habeas relief.  Pursuant to § 2254, a petitioner can challenge a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Eleventh Circuit has repeatedly held that defects in state collateral proceedings, including alleged violations of due process, are not bases for federal habeas relief because they do not go to the legality of the petitioner's detention or imprisonment.  *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010); *Carroll v. Sec., DOC.*, 574 F.3d 1354, 1365-66 (11th Cir. 2009); *Quince v. Crosby,* 360 F.3d 1259, 1261-62 (11th Cir. 2004); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987).[9]

The Petitioner directs the Court to statements in a dissenting opinion and a concurring opinion suggesting that when states choose to provide collateral review

---

[9] The court in *Quince* did note that deficiencies in state collateral proceedings "might deprive the state of the presumption of correctness with respect to the findings of [the state court judge]." 360 F.3d at 1262. However, this argument is not the same as directly seeking habeas relief based on a deficiency in a state collateral proceeding because "it only affects the presumption to which findings of fact are entitled on habeas review, thus only indirectly affecting" the analysis of other claims. *Id.* at n.3.

procedures, they become part of the "process" that is due the petitioners in state custody. *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1302 (2011) (Thomas, J., Kennedy, J., Alito, J. dissenting) ("[A]lthough a State is not required to provide procedures for postconviction review, it seems clear that when state collateral review procedures are provided for, they too are part of the 'process of law under which [a prisoner] is held in custody by the State.'" (citation omitted)); *Murray v. Giarratano*, 492 U.S. 1, 14 (1989) (Kennedy, J., O'Connor, J., concurring) ("It cannot be denied that collateral relief proceedings are a central part of the review process for prisoners sentenced to death."). Additionally, the Petitioner points to a Fourth Circuit case suggesting a petitioner may claim a due process violation occurred in his state habeas court proceeding. *Weeks v. Angelone*, 176 F.3d 249, 274 (4th Cir. 1999) ("Under the persuasive reasoning of *Bonin*, a petitioner may claim a due process violation occurring in his state habeas proceeding, but he may not premise this claim solely on the alleged ineffective assistance of state habeas counsel."). While these cases may *suggest* a cognizable claim for a due process violation in a state collateral proceeding, at this point there is not such a claim. The Court cannot ignore binding precedent that clearly bars challenging alleged defects in state collateral proceedings via § 2254.

The Petitioner also points to the Supreme Court's decisions in *Coleman v. Thompson*, 501 U.S. 722 (1991); *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012); and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013); and contends these decisions "support[] the viability of Claim Eight." In *Martinez*, the Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim

> of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320.  This established an exception to *Coleman*'s "unqualified statement … that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  *Id.* at 1315.  *Trevino* extended the *Martinez* exception to circumstances in which a state's procedural framework makes it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  133 S. Ct. at 1921.  These cases establish an equitable principle excusing procedural default—not a constitutional rule and, thus, not a claim for federal habeas relief.  *See Martinez*, 132 S. Ct. at 1315, 1320 (declining to decide whether a petitioner has a right to effective assistance of counsel in state habeas proceedings as a constitutional matter and explaining "'[c]ause' … is not synonymous with 'a ground for relief'").

The bottom line is that an alleged violation of due process in a state collateral proceeding is not itself a basis for federal habeas relief.

### D.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability [COA] when it enters a final order adverse to the applicant."  A COA may only issue if a petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If the habeas petition is denied on procedural grounds, the proper inquiry is whether a petitioner has shown, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Petitioner has not shown jurists of reason would find it debatable that his petition was timely filed or that equitable tolling applies in light of his failure to show how his attorney's misconduct stood in the way and prevented his timely filing. Therefore, a COA is **DENIED**.

### III.   CONCLUSION

The Respondent's motion to dismiss (Doc. 6) is **GRANTED**. The petition is **DISMISSED as untimely** and a COA is **DENIED**.

**SO ORDERED**, this 19th day of March, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT